KEN NAGY (I.S.B. No. 6176)
ATTORNEY AT LAW
P.O. Box 164
Lewiston, Idaho 83501
Telephone: (208) 301-0126
Facsimile: (888) 291-3832
E-mail: knagy@lewiston.com

ATTORNEY FOR PLAINTIFF

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| INTERMOUNTAIN FAIR HOUSING COUNCIL, INC., | ) ) ) | CASE NO. CV ___12-172_____ |
| Plaintiff, | ) ) | VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL |
| vs. | ) ) | |
| IDAHO HOUSING AND FINANCE ASSOCIATION, THE HOUSING COMPANY, CAMAS VILLAGE APARTMENTS, NORTH IDAHO III LTD. PARTNERSHIP, and NORTH IDAHO THREE, INC., | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

COMES NOW the Plaintiff Intermountain Fair Housing Council, Inc. and for a cause of

action against the Defendants Idaho Housing and Finance Association, The Housing Company,

Camas Village Apartments, North Idaho III Ltd. Partnership, and North Idaho Three, Inc. states

and alleges as follows:

VERIFIED COMPLAINT AND                 1
DEMAND FOR JURY TRIAL

<u>NATURE OF THE ACTION</u>

1.   This is an action brought by the above-named Plaintiff for declaratory judgment, permanent injunctive relief and damages on the following bases:

a.  <u>Fair Housing Act,</u> 42 U.S.C. §3601 *et seq.* (hereinafter "FHA"), and in particular:

i.  Discrimination in the sale or rental, or otherwise made unavailable, a dwelling because of "handicap", "familial status", "race" and "color" in violation of 42 U.S.C. §3604;

ii. Discriminatory terms, conditions or privileges in the sale or rental of a dwelling because of "handicap", "familial status", "race" and "color" in violation of 42 U.S.C. §3604;

iii.  Making, printing or publishing a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation or discrimination based on "handicap", "familial status", "race" and "color" in violation of 42 U.S.C. §3604; and

vi.  Interference, coercion or intimidation in violation of 42 U.S.C. §3617.

b.  <u>Fair Housing Regulations,</u> 24 C.F.R. §100 *et seq.*

c.  <u>The Rehabilitation Act of 1973,</u> 29 U.S.C. §701 *et seq.* (hereinafter "Rehabilitation Act"), as well as its implementing regulations.

d.  <u>Title VI of the Civil Rights Act of 1964</u>, 42 U.S.C. §2000d *et seq.* (hereinafter Title VI), as well as its implementing regulations.

e.  <u>United States Constitution</u>, 14th Amendment.

f.  <u>42 U.S.C. §1983</u>, as well as its implementing regulations.

VERIFIED COMPLAINT AND                              2
DEMAND FOR JURY TRIAL

g.  42 U.S.C. §1982, as well as its implementing regulations.

JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to 42 U.S.C. §3613 and 28 U.S.C. §§1331, 1337, 1343, 1345, 2000d-2 and 2201.  The amount in controversy exceeds $75,000 exclusive of interests and costs.

3.   Venue is proper in this District pursuant to 28 U.S.C. §§1391(b) and 1391(c) because the acts and omissions complained of herein occurred in this District, and because at all times materials and relevant, the Defendants resided in and transacted business in this District.

PARTIES

4.   The Plaintiff Intermountain Fair Housing Council, Inc. (hereinafter "Plaintiff") is a private, nonprofit organization organized under the laws of the State of Idaho with its principal place of business at 350 North 9th Street, Suite M-100, Boise, Idaho 83702.  Its mission is to advance equal access to housing for all persons without regard to race, color, sex, religion, national origin, familial status, or disability (the term "handicap", as that term is used and defined in the FHA, is used herein interchangeably with the term "disability").  The Plaintiff serves housing consumers through, among other things, counseling and education on the fair housing laws and assistance with complaints, and enforcement of fair housing laws.

5.   The Defendant Idaho Housing and Finance Association (hereinafter "the Defendant IHFA"), is an independent public body created by Idaho Code §§67-6201 *et seq*.  The Defendant IHFA owns and operates the Defendant The Housing Company, and is a recipient of Community Development Block Grants and other federal funds.  The Defendant IHFA is subject to the requirement that it affirmatively further fair housing pursuant to 42 U.S.C. §§3608(e)(5), 5304(b)(2) and 12705(b)(15), and 24 C.F.R. §570.487  At all times material hereto, the

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL                          3

Defendant IHFA has been organized under the laws and doing business in the State of Idaho.  Its principal place of business is 565 West Myrtle Street, Boise, Idaho 83702.  **Counts One through Five, as described below, apply to this Defendant.**

6.   The Defendant The Housing Company (hereinafter "Defendant Housing Company") is incorporated and doing business under the laws of the State of Idaho.  The Defendant Housing Company is the property management company with regards to the Defendant Camas Village Apartments.  **Only Count One, as described below, applies to this Defendant.**

7.   Camas Village Apartments (hereinafter "Defendant Camas Village") is an unincorporated apartment complex containing more than 4 apartment units doing business in the State of Idaho.  Defendant Camas Village is located at 1875 White Avenue, Moscow, Idaho 83843.  **Only Count One, as described below, applies to this Defendant.**

8.   The Defendant North Idaho III Ltd. Partnership is a partnership doing business under the laws of the State of Idaho.  Said Defendant is the owner of the Defendant Camas Village Apartments.  **Only Count One, as described below, applies to this Defendant.**

9.   The Defendant North Idaho Three, Inc. is incorporated and doing business under the laws of the State of Idaho.  Said Defendant is the General Partner with regards to the Defendant North Idaho III Ltd. Partnership.  **Only Count One, as described below, applies to this Defendant.**

<u>STANDING OF PLAINTIFF</u>

10.   The Plaintiff brings this action pursuant to the FHA and its implementing regulations in order to remedy damages suffered as the result of the Defendants' actions and omissions, including the diversion of the Plaintiff's past and future resources, lost economic opportunity, and the frustration of its mission.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
**Attorney at Law**
Lewiston, Idaho

11.  The Plaintiff's mission, as described above, has been frustrated by the Defendants' practices because the Defendants' violations of the FHA communicate to housing consumers and housing providers that discriminatory practices are permissible and that correctional remedies are not available, thereby hampering the Plaintiff's efforts to educate the public on fair housing issues and to advance equal access to housing.

12.  The Plaintiff's mission has further been frustrated as the Defendants' violations of the FHA have reduced the pool of non-discriminatory rental housing available to tenants in the State of Idaho.

13.  In order to counteract the frustration of its mission, the Plaintiff has had to devote significant resources to counsel the victims of the Defendants' conduct and to assist with relocation to non-discriminatory housing.  The Plaintiff has also devoted significant resources to identify, investigate, document and take action to correct the Defendants' violations of the FHA, including but not limited to the incurrence of litigation expenses.  As a result, the Plaintiff has actually diverted resources from other fair housing-related activities, including fair housing education and enforcement activities throughout the State of Idaho and the surrounding region. Furthermore, the Plaintiff will necessarily incur additional expenses in the future to counteract the lingering effects of the Defendants' violations of the FHA through the monitoring of the Defendants' activities, publication and advertising costs, and the sponsorship of educational activities.

14.  As a direct result of the Defendants' actions and omissions as described below, the Plaintiff is an "aggrieved person", as that term is defined by the FHA.  42 U.S.C. §3601(i).  The Plaintiff has suffered and continues to suffer significant and irreparable loss and injury, and has sufficient standing to bring this action before this Court.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

5

COUNT ONE:
DISCRIMINATION ON THE BASIS OF RACE, COLOR AND FAMILIAL STATUS IN
VIOLATION OF THE FHA AND VIOLATIONS OF THE 14th AMENDMENT OF THE U.S.
CONSTITUTION, 42 U.S.C. §1983, AND 42 U.S.C. §1982 COMMITTED BY DEFENDANTS
IHFA, THE HOUSING COMPANY, CAMAS VILLAGE APARTMENTS, NORTH IDAHO III
LTD. PARTNERSHIP, AND NORTH IDAHO THREE, INC.

15.   The Plaintiff realleges and herein incorporates by reference the allegations set forth
in Paragraphs 1-14 above.

16.   M.D. entered into a lease agreement with the Defendants on or about the 15th day of
August, 2008 with regards to Apartment No. 101 located at the Camas Village Apartments, 1911
White Avenue, Moscow, Idaho 83843.  M.D. is a single mother and she resided at said apartment
with her two minor children.

17.   M.D. and her two minor children are black African-Americans.

18.   Upon beginning her residency at the Camas Village Apartments, M.D. was provided
with a "Resident Handbook" by the Defendants.  M.D. reviewed the "Resident Handbook" and
observed that it contains a rule providing that "a parent or responsible adult must supervise
children in their care or custody when they are on the playground.  'Supervision' is defined as
the parent or responsible person being physically present on the playground area with the young
child."

19.   M.D. further observed that the Defendants had posted a notice on the bulletin board
located in the lobby of the Camas Village Apartments' Leasing Office which provides "Your
Resident Handbook states 'Playground and Other Common Areas:. . .a parent or responsible
adult must supervise children in their care or custody when they are on the playground or riding
bikes or trikes.  **'Supervision is defined as the parent or responsible person being physically
present on the playground area with the young child'** [*not watching from the kitchen or*

VERIFIED COMPLAINT AND            6
DEMAND FOR JURY TRIAL
                                                      **KEN NAGY**
                                                      **Attorney at Law**
                                                      Lewiston, Idaho

***living room window].***"  The notice further provides "Remember, you are responsible to stay with your children, and to supervise them at all times."

20.  Upon viewing the notice described above, M.D. recognized that the posted notice was even more restrictive with regards to the requirements placed upon minor children than the provision contained in the Resident Handbook.

21.  As the result of these requirements contained in the Resident Handbook and the notice posted by the Defendants' on the bulletin board as described above, M.D. felt coerced and intimidated, and she restricted the movements and activities of her minor children in the common areas of the Camas Village Apartments.  Also, as a result of such requirements, M.D.'s activities were restricted and her ability to seek and obtain employment was interfered with.

22.  Furthermore, during a portion of the month of November 2009, M.D.'s brother, who is also a black African-American, stayed with M.D. and her two minor children temporarily as a guest, during which time he provided the M.D. with child care so that she could work.  The Resident Handbook permits guests.

23.  As a result of her brother staying as a guest with her and her two minor children, M.D. was served with a notice of a lease violation by the Defendants on or about the 27th day of January, 2010, alleging that the M.D.'s brother was residing at the apartment.

24.  As a result of the notice of lease violation, M.D. informed Eula Ford, the property manager for the Defendant Camas Village Apartments, that her brother had merely been a guest and was not residing at the apartment.  M.D.'s brother ceased being a guest at her apartment prior to receiving the notice of lease violation and has continuously resided elsewhere throughout the time period relevant to this action.

VERIFIED COMPLAINT AND                    7
DEMAND FOR JURY TRIAL

25.  Throughout the remaining period of the M.D.'s tenancy at Camas Village Apartments, her brother occasionally visited M.D. and her two minor children, and at times provided M.D. with day care for her two minor children in order to enable M.D. to maintain employment.

26.  On or about the 24th day of March, 2010, M.D. was served with a Notice of Material Non-Compliance with Lease by the Defendants, alleging that M.D.'s brother is living with her in violation of the lease.  M.D. again informed Eula Ford, property manager for the Defendant Camas Village Apartments, that her brother is not living with her and is only a guest.  Ms. Ford nevertheless informed M.D. that the Defendants would pursue her eviction for allowing occupancy by another person who is not on the lease.

27.  M.D. observed that white residents of the Camas Village Apartments who also had guests were not subject to such actions and treatment by the Defendants.

28.  On or about the 29th day of March, 2010, M.D. submitted a complaint of housing discrimination to the Plaintiff.  As a result of said complaint, the Plaintiff counseled M.D. with regards to her fair housing rights, assisted her with a housing search and with the preparation of an administrative complaint to the United States Department of Housing and Urban Development (hereinafter "HUD"), and it conducted an investigation of the Defendants' actions.

29.  The Defendants served M.D. with a Notice of Material Non-Compliance with Lease dated the 14th day of June, 2010 which falsely alleges that M.D. is in violation of her lease agreement because the police have come to her residence looking for her brother.

30.  As a result of the Defendants' actions, including the issuance of notice of lease violations and threats of eviction, M.D. reasonably feared the termination of her tenancy if she continued to use her brother for child care.  As a result, M.D. was not able to obtain further

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

8

employment in order to stay current on her rent, became delinquent on her rent and the

Defendants evicted her from the Camas Village Apartments on or about the 30th day of June,

2010.

31.   On or about the 2nd day of July, 2010, M.D. filed a fair housing complaint with HUD

regarding the Defendants' actions, as described above.

32.   The Plaintiff investigated the Defendants' conduct with regards to this matter,

concluded that their actions violate the FHA, and on or about the 24th day of August, 2010, the

Plaintiff filed a fair housing complaint with HUD regarding the Defendants' actions, as described

above.

33.   The Defendants have engaged in housing discrimination in violation of the FHA on

the basis of "race", "color" and "familial status".

34.   The Defendants have discriminated in the terms, conditions or privileges of the sale

or rental of a dwelling, the provision of services or facilities in connection therewith, because of

"race", "color" and "familial status" in violation of §3604(b) of the FHA.

35.   The Defendants have made, printed or published, or caused to be made, printed or

published, a notice, statement or advertisement with respect to the sale or rental of a dwelling

that indicates a preference, limitation or discrimination based on "race", "color" and "familial

status" in violation of §3604(c) of the FHA.

36.   The Defendants have by excluded M.D. from participation in, denied the benefits of,

or subjected M.D. to discrimination under a program or activity receiving Federal financial

assistance on the grounds of "race" and "color" in violation of Title VI.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

KEN NAGY
**Attorney at Law**
Lewiston, Idaho

37. The Defendants have engaged in intentional racial segregation in government-assisted housing in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution and 42 U.S.C. §1983.

38. The Defendants have engaged in intentional racial discrimination with respect to property rights in violation of 42 U.S.C. §1982.

39. The conduct described above is willful and intentional, and exhibits reckless or callous indifference for the rights of the individuals at issue herein.

COUNT TWO:
DISCRIMINATION ON THE BASIS OF HANDICAP IN VIOLATION OF THE FHA AND
FAILURE TO COMPLY WITH §504 OF THE REHABILITATION ACT OF 1973
REGARDING THE GREENACRES PROJECT COMMITTED BY DEFENDANT IHFA

40. The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-39 above.

41. The Defendant IHFA receives and administers federal funds from HUD throughout the State of Idaho for housing-related programs. The programs funded with such monies are subject to the requirements of the FHA and §504 of the Rehabilitation Act (hereinafter "§504").

42. The Defendant IHFA established the Idaho Housing Foundation, Inc. on the 29th day of July, 2004. Said Foundation was renamed the Idaho Community Housing Foundation, Inc. on the 27th day of April, 2006, and again renamed the Home Partnership Foundation on the 29th day of February, 2008. The Defendant IHFA used federal funding received from HUD to establish said Foundation, and uses federal funding received from HUD to operate and administer said Foundation.

43. The purpose of the Home Partnership Foundation is to assist housing developers in acquiring funding to develop affordable housing projects throughout the State of Idaho. Such

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

funding is provided to and administered by the Defendant IHFA through Home Partnership

Foundation from private and public sources.

44.  The Greenacres Project is an affordable housing complex under construction in

Moscow, Idaho whose construction is funded by contributions from the Defendant from the

Home Partnership Foundation.  Since the Home Partnership Foundation is operated by the

Defendant IHFA by use of federal monies received from HUD, the Greenacres Project is a

federally-subsidized housing project and therefore subject to the requirements of §504.

45.  The Greenacres Project does not comply with the disability access requirements of

§504 and its implementing regulations.

46.  M.L. is "handicapped", as that term is defined by the FHA.

47.  M.L. visited the Greenacres Project with an interest in purchasing an accessible unit

in or about November 2009 and found that none of the units under construction were accessible

for a disabled person.

48.  On or about the 5th day of January, 2010, the Plaintiff received a complaint on behalf

of M.L. regarding the lack of accessible units for the disabled at the Greenacres Project.  The

Plaintiff has counseled M.L with regards to her right to accessible housing and investigated her

complaint.

49.  On or about the 12th day of October, 2010, the Plaintiff conducted an inspection of

the Greenacres Project and documented the lack of accessible features in violation of the FHA

and §504.  Construction of the project was not yet completed.  However, none of the completed

units fully complied with the legally-required disability access requirements and the unfinished

units also contained inaccessible features.

VERIFIED COMPLAINT AND                    11
DEMAND FOR JURY TRIAL

50.  The Plaintiff filed a complaint with HUD regarding this matter dated the 18th day of October, 2010.

51.  The Defendant IHFA has failed or refused to remedy the lack of accessibility at the Greenacres Project in violation of the FHA and §504.  Such conduct constitutes a continuing violation.

COUNT THREE:
FAILURE TO AFFIRMATIVELY FURTHER FAIR HOUSING REGARDING COMMITTED BY DEFENDANT IHFA IN VIOLATION OF THE FHA

52.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-51 above.

53.  The Defendant IHFA is the main recipient of federal funding from HUD in the State of Idaho.

54.  As a recipient of HUD funding, the Defendant IHFA is required to certify to HUD that the federal monies received by said Defendant will be conducted and administered in conformity with the FHA and that said Defendant will affirmatively further fair housing.  42 U.S.C. §§3608(e)(5), 5304(b)(2) and 12705(b)(15).

55.  The Defendant IHFA has failed to properly expend and distribute such federal monies, has failed to provide proper and adequate oversight of its grantees to ensure that they are complying with the FHA, and has provided misinformation regarding the requirements of the FHA to its grantees, housing providers who participate in the §8 housing assistance program, and to the public.

56.  A HUD audit issued on the 26th day of January, 2006 found that the Defendant IHFA engaged in numerous inappropriate activities in distributing HUD monies in the State of Idaho, including: (1) failing to adequately monitor its subsidized multifamily housing projects;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL                                    12

(2) failing to comply with HUD regulations in administering HUD funding; (3) authorizing

distribution of HUD funding in excess of allowable amounts in the amount of $3,721,738.00;

(4) approving a duplicate request for reimbursement to a project in the amount of $24,562.00;

(5) approving a distribution of $182,264.00 without obtaining adequate supporting

documentation; (6) allowing a conflict of interest to exist between itself and the Defendant

Housing Company; and (7) increasing management fees with regards to 10 projects in excess of

HUD's residential management fee range in the total amount of $121,521.00.

57. As a result of the Defendant IHFA's inappropriate conduct with regards to the

distribution of HUD monies, the HUD audit concluded *inter alia* that $3,721,738.00 is no longer

available to reduce housing assistance payments or for the provision of housing assistance to

low-income individuals.

58. The Defendant IHFA has failed to properly expend and distribute such federal

monies in compliance with the FHA.

59. Additionally, the Defendant IHFA provides HUD funding to numerous grantees

throughout the State of Idaho for the purpose of operating homeless and domestic violence

shelter facilities.

60. The recipients of grants of federal monies from the Defendant IHFA engage in

discrimination on the basis of "handicap" in violation of the FHA by refusing to allow

reasonable accommodations for service or support animals, or impose discriminatory terms,

conditions and privileges on residents with regards to reasonable accommodations for service or

support animals, including:  (1) The Women's Center, Inc., 850 N. 4th Street, Coeur d'Alene,

Idaho 83814; (2) Idaho Council on Domestic Violence and Victim Assistance, P.O. Box 83720,

Boise, Idaho 83720-0036; (3) City of Refuge a/k/a Family Care Center, 840 Park Avenue, Idaho

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

13

Falls, Idaho 83406; (4) Family Care Center, Inc., 1675 Curlew Drive, Idaho Falls, Idaho 83406;

(5) Good Samaritan Rehabilitation, Inc., 5590 South Blue Creek Road, Coeur d'Alene, Idaho

83814; (6) South Central Community Action Partnership, 550 Washington Street South, Twin

Falls, Idaho 83303; (7) Valley Housing Coalition, Inc., 507 Addison Avenue West, Twin Falls,

Idaho 83301; (8) The Crisis Center of the Magic Valley, a/k/a Volunteers Against Violence, Inc.,

P.O. Box 2444, Twin Falls, Idaho 83303; (9) Aid For Friends, P.O. Box 4233, Pocatello, Idaho

83205; (10) Oneida Crisis Center, Inc., 10 Court Street, Malad, Idaho 83252; and (11) Advocates

for Survivors of Domestic Violence and Sexual Assault, P.O. Box 3216, Hailey, Idaho 83333.

 61.  The Defendant IHFA has failed to provide proper and adequate oversight of its

grantees to ensure that they are complying with the FHA.

 62.  Additionally, the Defendant IHFA directs its grantees, housing providers who

participate in the §8 housing assistance program, and the public to consult its website for

information regarding requirements imposed by the FHA.  The Defendant IHFA's website

provides erroneous and deceptive information regarding reasonable accommodations for service

and support animals, and erroneously applies requirements of the Americans with Disabilities

Act (hereinafter "ADA") regarding training requirements of service animals to reasonable

accommodations for service or support animals pursuant to the FHA.

 63.  W.P., the owner of a property management company that participates in the §8

housing assistance program operated by the Defendant IHFA, was directed by said Defendant to

consult its website for information regarding requirements imposed by the FHA.  W.P. complied

with the Defendant IHFA's directives and as a result, erroneously believed an animal must

receive special training in order for it to be considered a service and support animals.  When

W.P. received a reasonable accommodation request for a service or support animal that had not

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

    14

received such special training, he erroneously believed that the animal did not qualify as a

service or support animal and that he could therefore charge a pet deposit for the animal.

64. As a result of the conduct engaged in by W.P., he and his property management

company were subjected to a fair housing complaint filed by the Plaintiff with HUD.

65. W.P. contacted the Defendant IHFA to discuss the matter and explained the situation

to Craig Stoddard, the Branch Supervisor for said Defendant's Idaho Falls, Idaho office.  Mr.

Stoddard reviewed the guidance provided by the Defendant IHFA's website, and admitted that

the guidance is misleading and that it needs to be changed.

66. Also, as a result of the misinformation provided by the Defendant IHFA, St. Vincent

de Paul, a transitional housing provider which receives funding from said Defendant, prepared a

document which it distributed to its residents which erroneously applied the ADA requirements

pertaining to service animals to reasonable accommodations for service or support animals

pursuant to the FHA.

67. As a result of the conduct engaged in by St. Vincent de Paul, said transitional

housing provider was subjected to a fair housing complaint filed by the Plaintiff with HUD.

68. The Defendant IHFA has failed to affirmatively further fair housing in violation of

42 U.S.C. §§5304(b)(2) and 12705(b)(15) and HUD regulations.

69. The Defendant IHFA has falsely certified to HUD that it affirmatively furthers fair

housing.

70. The Defendant's conduct has resulted in the reduction of housing assistance to

persons with disabilities and has reduced the pool of non-discriminatory housing throughout the

State of Idaho.

VERIFIED COMPLAINT AND              15
DEMAND FOR JURY TRIAL
                                                          **KEN NAGY**
                                                         **Attorney at Law**
                                                          Lewiston, Idaho

71.  The Defendant IHFA has engaged in discrimination on the basis of "handicap" in violation of the FHA.

72.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the individuals at issue herein.

COUNT FOUR:
INTERFERENCE, COERCION OR INTIMIDATION IN VIOLATION OF THE FHA
COMMITTED BY DEFENDANT IHFA

73.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-72 above.

74.  The Defendant IHFA has engaged in conduct that undermines the activities and mission of the Plaintiff, as well as its efforts to ensure compliance with the FHA throughout the State of Idaho.

75. On or about the 19th day of April, 2010, the Plaintiff and the Defendant IHFA both provided speakers for a public fair housing compliance training held in Boise, Idaho.

76.  The Defendant IHFA began its presentation by presenting on a study that it had commissioned entitled Final Report, 2009 Analysis of Impediments to Fair Housing and Community Resources in Idaho, An Assessment of Perceptions Across Multiple Stakeholder Groups, dated the 4th day of January, 2010 (hereinafter "Analysis of Impediments").

77.  In making its presentation, the Defendant focused on a minor and unsubstantiated portion of the Analysis of Impediments which singles out the Plaintiff and Richard Mabbutt, the Executive Director of the Plaintiff, for personal attack supported only by mere anecdotal comments.  In support of its attack, the Defendant IHFA distributed to the more-than-300 participants a heavily-redacted version of its Analysis of Impediments in an attempt to discredit

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

16

the work of the Plaintiff, as well as its Executive Director, and to coerce the Plaintiff into curtailing its enforcement activities.

78.  Such conduct had the result of promoting anger and resentment in the attendees of the conference and undermined the effectiveness of the Plaintiff's training on important fair housing compliance issues, and the Plaintiff has had to engage in actions to rehabilitate its reputation in order to maintain the effectiveness of its program.

79.  The Defendant has engaged in coercion, intimidation or interference in the exercise or enjoyment of rights granted by 42 U.S.C. §§3603 and 3604, in violation of §3617 of the FHA.

80.  Such conduct is willful and intentional, and exhibits reckless or callous indifference for the rights of the individuals at issue herein.

COUNT FIVE:<br>FAILURE TO PROPERLY RESPOND TO REASONABLE ACCOMMODATION<br>REQUESTS COMMITTED BY THE DEFENDANT IHFA

81.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-80 above.

82.  S.H. is "handicapped", as that term is defined by the FHA.

83.  S.H. is a tenant of a subsidized housing complex operated by the Defendant IHFA.

84.  On or about the 12th day of October, 2010, S.H. requested a reasonable accommodation from the Defendant IHFA.  The Defendant IHFA required S.H. to complete a Request for Reasonable Accommodation in Housing form (hereinafter "Reasonable Accommodation form").

85.  The Defendant IHFA required S.H. to complete its Reasonable Accommodation form.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

17

86.  The Defendant IHFA's Reasonable Accommodation form provides an improper and overly-restrictive definition of "Individuals with handicaps" in violation of the FHA.

87.  The Defendant IHFA's Reasonable Accommodation form also requires the individual requesting a reasonable accommodation to sign a release which authorizes the Defendant IHFA to directly contact the person who is in a position to know about the individual's disability, and who can verify the individual's disability and the reasonable accommodation request.  The Defendant IHFA has violated HUD fair housing regulations, which prohibit inquiry into the nature or severity of a disability.  24 C.F.R. §100.202(c).

88.  The Plaintiff received a complaint S.H. regarding the Defendant IHFA's use of the Reasonable Accommodation form.

89.  The Plaintiff counseled S.H. on fair housing rights, investigated the Defendant IHFA's conduct with regards to this matter and concluded that its actions violate the FHA.

90.  On or about the 30th day of October, 2010, the Plaintiff filed a fair housing complaint regarding the Defendant IHFA's conduct, as described above.

DAMAGES

91.  The Plaintiff realleges and herein incorporates by reference the allegations set forth in Paragraphs 1-90 above.

92.  As the result of the actions and omissions of the Defendants, as described above, the Plaintiff has suffered significant and irreparable loss and injury.

93.  The Plaintiff is an "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and is an intended beneficiary of the protections and requirements of the statutes, laws and regulations referenced above.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

18

94.  The Plaintiff has suffered actual damages as a result of its out-of-pocket expenses and past diversion of its resources, as described above and in the attached "Appendix A", in the amount of $133,425.34, which continue to accrue.

95.  The Plaintiff has suffered actual damages as a result of the necessary future diversion of its resources, as described above and in the attached "Appendix A", in the amount of $86,000.00.

96.  The Plaintiff has suffered actual damages as a result of lost economic opportunity, as described above and in the attached "Appendix A", in an amount to be determined by the Court.

97.  The Plaintiff has suffered actual damages as a result of the frustration of its mission, as described above and in the attached "Appendix A", in the amount of $196,188.95.

98.  In addition to the injuries suffered by the Plaintiff, the Defendants have also caused significant and irreparable loss and injury to a number of identified and as-of-yet unidentified persons, as described above.

99.  Said identified and as-of-yet unidentified victims are "aggrieved person[s]", as defined in 42 U.S.C. §3601(i), and are intended beneficiaries of the protections and requirements of the statutes, laws and regulations referenced above.

100.  All victims of the Defendants' actions and conduct should be identified and compensated through a Victims' Compensation Fund.

101.  A Victims' Compensation Fund should be established in an amount to be determined by the Court in order to compensate identified and as-of-yet unidentified victims of the Defendants' discriminatory conduct, as described in the attached "Appendix B", from which such victims should be compensated.

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

102.  Said Victims' Compensation Fund should be established and administered as follows:

a.  The Plaintiff shall be assigned the task of managing and administering the Victims' Compensation Fund.  The Plaintiff shall be compensated for all time spent administering said Fund at the rate of $45.88 per hour.  The Plaintiff shall keep detailed records of all tasks engaged in and shall submit copies of said records to the Court and the Defendants on a monthly basis.

b.  Within thirty (30) days of the entry of an order by this Court creating a Victims' Compensation Fund, the Defendants shall deposit in an interest-bearing escrow account the total sum as determined by applying the calculation set forth in the attached Appendix B.

c.  Any interest accruing to such Victims' Compensation Fund shall become a part of the fund and be utilized as set forth herein.

d.  Within fifteen (15) days after the Defendants deposit funds in the Victims' Compensation Fund, the Plaintiff shall publish a Notice to Potential Victims of Housing Discrimination (hereinafter "Notice") in at least five daily newspapers serving the main population centers of the State of Idaho informing readers of the availability of compensatory funds.  The form and content of the Notice shall be approved by the Court at the time of the entry of the Court's order establishing the Victims' Compensation Fund.  The Notice shall be no smaller than three columns by six inches and shall be published on three occasions in each newspaper.  The publication dates shall be separated from one another by at least 21 days, and at least two of the publication dates shall be a Sunday.  The Plaintiff shall send a

VERIFIED COMPLAINT AND                    20
DEMAND FOR JURY TRIAL

copy of the Notice prior to each and every publication date to each of the
following organizations: (1) Living Independent Network Corp. (LINC), 1878
Overland Road, Boise, Idaho 83705; (2) DisAbility Rights Idaho, 4477 Emerald
Street, Suite B-100, Boise, Idaho 83706; Disability Action Center, 505 North
Main Street, Moscow, Idaho 83843; and (4) Living Independently for Everyone
(LIFE), P.O. Box 4185, 640 Pershing Avenue, Suite 7, Pocatello, Idaho 83201.

e.  Within thirty (30) days of the entry of an order by this Court creating a Victims'
Compensation Fund, the Plaintiff shall send by first-class mail, postage prepaid, a
copy of the Notice to each tenant who currently resides or who resided at any time
at the subject property.

f.  Nothing in this section shall preclude the Plaintiff from making its own additional
efforts at its own expense to locate and provide notice to potentially aggrieved
persons.

g.  Allegedly aggrieved persons shall have one hundred-twenty (120) days from the
date of the entry of an order by this Court creating a Victims' Compensation Fund
to contact the Plaintiff in response to the Notice.  The Plaintiff shall investigate
the claims of allegedly aggrieved persons and, within one hundred-eighty (180)
days from the entry of an order by this Court creating a Victims' Compensation
Fund, shall make a preliminary determination of which persons are aggrieved and
an appropriate amount of damages that should be paid to each such persons.  The
Plaintiff will inform the Defendants in writing of its preliminary determinations,
together with a copy of a sworn declaration from each aggrieved person setting
forth the factual basis of the claim.  The Defendants shall have fourteen (14) days

VERIFIED COMPLAINT AND                    21
DEMAND FOR JURY TRIAL

to review the declaration and to provide to the Plaintiff any documents or information that it believes may refute the claim.

h. After receiving the Defendants' refutation, if any, the Plaintiff shall submit its final recommendations to the Court for approval, together with a copy of the declarations and any additional information submitted by the Defendants. When the Court issues an order approving or changing the Plaintiff's proposed distribution of funds for aggrieved persons, the Defendants shall, within ten (10) days of the Court's order, deliver to the Plaintiff checks payable to the aggrieved persons in the amounts approved by the Court. In no event shall the aggregate of all such checks exceed the sum of the Victims' Compensation Fund, including accrued interest and after deducting compensation to the Plaintiff as described above. No aggrieved persons shall be paid until he or she has executed and delivered to counsel for the Plaintiff a signed and notarized statement releasing the Defendants from all claims related to the subject property.

i. In the event that less than the total amount in the fund including interest is distributed to aggrieved persons, the remaining funds shall be submitted to an education fund to be drawn upon by the Plaintiff and other non-profit organizations for purposes of educating housing consumers and providers on the requirements of the Fair Housing Act. Said education fund shall be administered by Idaho Legal Aid Services, Inc..

j. The Defendants shall permit the Plaintiff, upon reasonable notice, to review any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

103.  The Court should award to the Plaintiff and against the Defendants punitive damages due to the intentional, willful and reckless nature of the Defendants' actions and omissions, in an amount to be determined by the Court.

104.  The Court should enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA, the Rehabilitation Act, Title VI, the Equal Protection Clause of the 14th Amendment of the United States Constitution, 42 U.S.C. §1983, and 42 U.S.C. §1982, as well as those statutes' implementing regulations.

105.  The Court should award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action, as provided for by statute and court rule.

106.  The Defendants should be held jointly and severally liable for any and all damages, including an award of attorney's fees and costs, awarded in this proceeding.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Plaintiff Intermountain Fair Housing Council, Inc. prays that the Court enter judgment against the above-named Defendants as follows:

A.  That the Court find and declare that the actions of the Defendants constitute violations of the FHA, the Rehabilitation Act, Title VI, the Equal Protection Clause of the 14th Amendment of the United States Constitution, 42 U.S.C. §1983, and 42 U.S.C. §1982;

B.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for its out-of-pocket expenses and past diversion of resources in the amount of $133,425.34, which continue to accrue;

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

23

C.  That the Court award to the Plaintiff and against the Defendants actual damages in compensation for the necessary future diversion of the Plaintiff's resources in the amount of $86,000.00;

D.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the Plaintiff's lost economic opportunity in an amount to be determined by the Court;

E.  That the Court award to the Plaintiff and against the Defendant actual damages in compensation for the frustration of the Plaintiff's mission in the amount of $196,188.95;

F.  That the Court enter an order establishing a Victims' Compensation Fund in an amount to be determined by the Court, as determined by applying the calculation set forth in the attached Appendix B and to be administered according to the terms set forth in Paragraph 102 above;

G.  That the Court award to the Plaintiff and against the Defendants punitive damages due to the reckless or callous nature of the Defendants' conduct in an amount to be determined by the Court;

H.  That the Court enjoin the Defendants, their officers, employees, agents, successors, and all other persons in active concert or participation with said Defendants, from failing or refusing to comply with all requirements of the FHA, the Rehabilitation Act, Title VI, the Equal Protection Clause of the 14th Amendment of the United States Constitution, 42 U.S.C. §1983, and 42 U.S.C. §1982, as well as those statutes' implementing regulations;

I.  That the Court award to the Plaintiff and against the Defendants reasonable attorney's fees and costs incurred in this action;

J.  That the Defendants be held jointly and severally liable for any and all damages, including an award of attorneys fees and costs, awarded in this proceeding; and

K.  That the Court order any further and additional relief as the interests of justice may require.

JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a trial by jury on all issues.

DATED this __5th__ day of ____April_____, 2012.


_____
KEN NAGY
ATTORNEY FOR PLAINTIFF


VERIFIED COMPLAINT AND                    25
DEMAND FOR JURY TRIAL

RICHARD MABBUTT, being first duly sworn on his oath, deposes and says:

I am the Executive Director of the Intermountain Fair Housing Council, Inc., the Plaintiff herein, that I have read the foregoing document, know well the contents thereof, and that the facts therein stated are true to the best of my knowledge and belief.

_____/s/_____

RICHARD MABBUTT

STATE OF I D A H O  )
                         : ss

County of _____Ada_____ )

I, ___Carrie House_____, a Notary Public for said state, does hereby certify that on the __30th__ day of ___March_____, 2012, personally appeared before me RICHARD MABBUTT, Executive Director of the Intermountain Fair Housing Council, Inc., who, being by me first duly sworn, declared that he signed the foregoing document as such, and that the statements therein contained are true and accurate as he verily believes.

SEAL

Carrie House
Notary Public
State of Idaho

_____/s/_____

Notary Public in and for the State of ___Idaho_____
Residing at: ___Boise_____
My commission expires: ___3/1/2013_____

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho

## APPENDIX A:

## PLAINTIFF'S MEMORANDUM OF DAMAGES

The Plaintiff has identified four categories of damages that it has suffered as the result of the Defendants' failure to comply with the FHA and the Rehabilitation Act of 1973.  These categories are: (1)  Past Diversion of Resources; (2) Future Diversion of Resources; (3) Lost Economic Opportunity; and (4) Frustration of Mission.  Each of these categories of damages have been recognized and awarded by various courts to organizational plaintiffs in previous fair housing cases.[1]

The following represents an itemization of the Plaintiff's damages:

### 1.  Out-of-Pocket Expenses and Past Diversion of Resources

The Plaintiff has incurred significant pre-litigation expenses as a result of the Defendants' discriminatory actions, which are constituted by its out-of-pocket expenses and its past diversion of resources.  The Plaintiff has sponsored training workshops in the Defendants' geographic

---

[1]*See, Southern Cal. Housing Rights Center v. Krug*, 564 F.Supp.2d 1138 (Cent. Dist. Cal. 2007) (fair housing organization awarded $6,590.80 for diversion of resources and $29,065.32 for frustration of mission), *Fair Housing of Marin v. Combs*, 285 F.3d 899 (9th Cir. 2002) (fair housing organization awarded $14,217.00 for the diversion of resources); *HUD v. Perland*, Fair Housing-Fair Lending Rptr. ¶25,136 (HUD ALJ 1998) (fair housing organization awarded $4,516 for the diversion of resources and $1,400 for the costs of future monitoring of the defendants); *Ragin v. Harry Macklowe Real Estate Co.*, 801 F.Supp. 1213, *aff'd in pertinent part*, 908 F.3d 898 (2nd Cir. 1993) (fair housing organization awarded $20,000 for the diversion of resources); *HUD v. Jancik*, Fair Housing-Fair Lending Rptr. ¶25,058 (HUD ALJ 1993) (fair housing organization awarded $13,386 for the diversion of past and future resources and $9,000 for the financial opportunity lost as a result of the investigation and litigation of the case); *City of Chicago v. Matchmaker Real Estate Sales Center, Inc.*, 982 F.2d 1086 (7th Cir. 1992) (fair housing organization awarded $16,500 for out-of-pocket expenses and costs of future monitoring and training); *Saunders v. General Services Corp.*, 659 F.Supp. 1042 (E.D. Va. 1987) (fair housing organization awarded $2,300 for the diversion of resources and $10,000 for the frustration of its equal housing mission).

area, and has engaged in site monitoring, investigation, complaint preparation, counseling and other activities with regards to this matter.

As a result of these activities, it has incurred expenses as follows:

a.   Investigation and Counseling Costs:                    $23,236.39

b.   Educational efforts:                                              $82,728.50

c.   Cost of Deferred Actions:                                     $27,460.45

Total Past Diversion of Resources:  $133,425.34

Further litigation of these matters will result in an increase in the Plaintiff's diversion of resources, as well as other damages.

**2.  Future Diversion of Resources**

The Plaintiff has an affirmative duty to ensure the Defendants' ongoing compliance with the FHA and other federal protections with regards to the properties and programs that are the subject of this proceeding, as well as other properties and programs in which the Defendants participate.  Such monitoring activities include site visits, training of Defendants and their employees and agents, counseling of victims, and testing.

The Plaintiff expects to incur the following expenses as a result of the current violations:

a.  Future Advertising Costs:                                      $50,000.00

b.  Cost of future training:                                          $30,000.00

c. Costs of Future Monitoring/Testing:                       $6,000.00

Total Future Diversion of Resources:    $86,000.00

**3.  Lost Economic Opportunity**

Vigorous investigation and enforcement of fair housing complaints, including the property at issue herein, has caused the Plaintiff to divert limited resources and manpower away

VERIFIED COMPLAINT AND                    28
DEMAND FOR JURY TRIAL

from grant-writing activities.  The Plaintiff could reasonably expect to have obtained additional funding to sponsor fair housing training events if it had not been so diverted due to the Defendants' actions.

The Plaintiff should be compensated by the Defendants for such lost funding opportunities in an amount to be determined by the Court.

### 4.  Frustration of Mission

The investigation of the subject of this complaint, the counseling and training provided to the community, and the preparation of the administrative complaint have caused the Plaintiff to divert significant resources toward this proceeding and has undermined the work of furthering fair housing in the state of Idaho.

As a direct result of the Defendants' discriminatory actions, the Plaintiff's mission of furthering fair housing has been significantly frustrated, and the Plaintiff has had to devote, and will continue to devote, additional resources in order to counteract the past and ongoing effects of this discrimination.

Furthermore, the properties and programs at issue in this proceeding have constituted a formidable barrier to non-discriminatory housing, thereby undermining the mission of the Plaintiff in guaranteeing fair housing to all residents of the state.  The Plaintiff has determined that it will be necessary to educate housing consumers regarding fair housing requirements in order to counteract the effects of the Defendants' failure to comply with the FHA and other federal protections.

The Plaintiff measures the damage to its frustration as the total monetary damages that the Defendants' actions have cost to correct, including lost funding opportunities.

a.  Frustration of Mission                                    $196,188.95

VERIFIED COMPLAINT AND                29
DEMAND FOR JURY TRIAL

## APPENDIX B:

## CALCULATION OF VICTIMS' COMPENSATION FUND

## I.  INTRODUCTION

In addition to the damages incurred by the Plaintiff, a number identified and of as-of-yet unidentified victims have also suffered damages as the result of the Defendants' discriminatory actions.  In furtherance of the Plaintiff 's mission, a Victims' Compensation Fund should be created in order to identify and obtain adequate compensation for such victims.

The Federal District Court for the District of Idaho has frequently ordered the establishment of a Victims' Compensation Fund in previous actions brought pursuant to the Fair Housing Act.  *See, United States of America and Intermountain Fair Housing Council v. Stealth Investment, LLC, et al.*, Case No. CV 07-500-E-EJL (Consent Decree entered May 29, 2008 establishing Victims' Compensation Fund in the amount of $12,500.00); *United States of America v. Taigen & Sons, Inc., et al.*, Case No. CV 01-337-N-EJL (Consent Order entered July 18, 2006 establishing Victims' Compensation Fund in the amount of $55,000.00); *United States of America v. Thomas Development Co., et al.*, Case No. CV 02-68-C-EJL (Consent Order entered March 11, 2005 establishing Victims' Compensation Fund in the amount of $100,000.00); *United States of America v. S-Sixteen Ltd. Partnership*, Case No. CV 03-154-S-BLW (Consent Order entered March 14, 2005 establishing Victims' Compensation Fund in the amount of $40,000.00); *United States of America v. Pacific Northwest Electric, Inc., et al.*, Case No. Civil No. 01-19-S-BLW (Consent Decree entered October 21, 2003 establishing Victims' Compensation Fund in the amount of $29,000.00); *United States of America v. Virginia L. Vanderpool, et al.*, Case No. CIV 01-78-S-BLW (Consent Order entered April 27, 2002 establishing Victims' Compensation Fund in the amount of $30,000.00); *United States of*

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

30

*America, et al., v. Duane B. Hagadone, et al.*, Case No. CV 97-603-N-RHW (Consent Order entered July 6, 1999 establishing Victims' Compensation Fund in the amount of $30,000.00).

Said orders, however, do not contain a description of how the amount of such a fund was calculated. The Victims' Compensation Fund that should be ordered herein should be calculated according to the underlying principles set forth below.

## II. UNDERLYING PRINCIPLES

A. The number of units and programs that are administered by the Defendants is currently unknown.

B. The number of months that the Defendants have administered the property and programs that are subject to the requirements of the Fair Housing Act and other federal protections is currently unknown.

C. The Plaintiff IFHC is the organization best equipped and situated to administer the fund.

D. The Plaintiff IFHC should be compensated at its operational rate of $45.88 per hour in the administration of the fund.

E. The number of hours that it will take to administer the fund and complete compensation of victims can reasonably be expected to be three hours per identified victim.

F. Administration of the fund will result in the incurrence of out-of-pocket expenses, such as advertising and travel costs, in the amount of $1,000.00 per identified victim.

## III. CALCULATION OF AMOUNT OF VICTIMS' COMPENSATION FUND

The total amount of the Victims' Compensation Fund should be calculated after all applicable figures are acquired from the Defendants through discovery in order to compensate identified and as-of-yet unidentified victims.

VERIFIED COMPLAINT AND
DEMAND FOR JURY TRIAL

31

**KEN NAGY**
**Attorney at Law**
Lewiston, Idaho